NOT PRECEDENTIAL

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT
_____

No. 09-1933
_____

UNITED STATES OF AMERICA

v.

IRVINE HODGE, JR.,
                                        Appellant

_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 3-99-cr-00006-002)
District Judge: Hon. Raymond L. Finch

_____

Argued May 4, 2010

Before:   SMITH, CHAGARES and JORDAN, *Circuit Judges*.

(Filed: August 5, 2010)
_____

David R. Fine   [ARGUED]
K&L Gates LLP
17 North Second St. - 18th Fl.
Harrisburg, PA   17101
          *Counsel for Appellant*

Ronald W. Sharpe
Nelson L. Jones   [ARGUED]
Audrey L. Thomas-Francis
United States Attorney's Office
5500 Veteran's Drive - #260
St. Thomas, VI   00802
          *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Irvine Hodge, Jr. and his brother, Devin Hodge, robbed a jewelry store in St. Thomas and murdered the store's owner.[1] The brothers pled guilty pursuant to identical plea agreements, and both received life sentences at a joint sentencing hearing. Devin appealed his life sentence to our court and prevailed on his argument that the government breached its plea agreement by implicitly recommending a life sentence despite its promise not to recommend any specific sentence. *United States v. Hodge*, 412 F.3d 479 (3d Cir. 2005) (hereinafter "*Devin Hodge*"). Although Irvine's lawyer failed to file an appeal, Irvine successfully obtained collateral relief as a result of his counsel's ineffectiveness, thereby permitting him to appeal his sentence. *Hodge v. United States*, 554 F.3d 372 (3d Cir. 2009) (hereinafter "*Irvine Hodge*"). Like his brother before him, Irvine now appeals, contending that the government breached its plea agreement with him by implicitly recommending a life sentence at the sentencing hearing. Because the government treated the brothers as a unit, including during its presentations at the sentencing hearing, we cannot fairly untangle what the government said about Irvine from what it said about his brother. Thus, we reach the same conclusion in Irvine's appeal as

_____

[1]Because the brothers share the same last name, we will refer to them by their first names.

we did in Devin's and will vacate Irvine's sentence and remand for proceedings consistent with this opinion.

## I.    Background

### A.    Plea Agreement and Sentencing

In 1998, Irvine, Devin, and an accomplice, Jason Hull, robbed the "Emerald Lady," a jewelry store on St. Thomas, and murdered Larry Davis, the store's owner. The three men were charged in a third superseding indictment with first degree murder, in violation of 18 U.S.C. § 924(j)(1); interfering with commerce by robbery, in violation of 18 U.S.C. § 1951; and tampering with a witness by killing, in violation of 18 U.S.C. § 1512(a). In April 2000, pursuant to a package plea deal,[2] Irvine and Devin pled guilty to first-degree murder. Under the brothers' identical plea agreements, the government reserved its right to speak at sentencing, but agreed that it would "make no specific sentencing recommendation other than to request that the sentence be within the guideline range."[3] (App. at 16, ¶ 9.) Hull also pled guilty to the charges in the indictment, although it appears that his plea agreement was not packaged with the Hodge brothers' agreements.

---

[2]"As their name suggests, package deal plea bargains exist where the government accepts a defendant's guilty plea on the condition that his co-defendant(s) also plead guilty." *Devin Hodge*, 412 F.3d at 489.

[3]In a supplemental plea agreement, Irvine agreed to cooperate and the government agreed that, if the cooperation was adequate, it would file a motion pursuant to U.S.S.G. § 5K1.1. The government never filed a 5K motion, but Irvine does not take any issue on appeal with the government's inaction.

3

On March 6, 2002, the three co-defendants were sentenced at the same proceeding in the District Court of the Virgin Islands. After sentencing Hull, the Court turned its attention to hearing from and about the Hodge brothers, beginning with Irvine. During its presentation, the government stated that Irvine "had every opportunity to be a positive influence in this community," that he had "everything going for him," but that, regardless, he inexplicably murdered Larry Davis. (App. at 68.) The prosecutor continued, veering between remarks directed at Irvine and then at both brothers:

> [I]t makes absolutely no sense that this defendant and his brother would join in what happened at that jewelry store. But we're here now. Larry Davis is dead. Ms. Rawlins[, a security guard who was shot during the incident,] is traumatized for the rest of her life. ... But I don't think we will ever understand what was in the mind of these two young men, Devin and Irvine Hodge. ... I've come to the realization, there is no explanation. They decided to be lawless. They decided to do these evil acts, and now they have to face the consequences of those actions.

(*Id.* at 69.)

The prosecutor then responded to statements of remorse Irvine made during his allocution, again mixing comments that specified Irvine with comments about both brothers:

> [I]t always amazes me that once a person gets convicted and spends some time in jail, pending sentencing, two things happen. They usually find religion, and they usually find great remorse. ... Whether the remorse is genuine or not, I leave that for a higher power to determine. But at some point this defendant [Irvine] has to realize that there are grave consequences for your actions. And what's even more amazing is that it wasn't the first time they had robbed the Emerald Lady Jewelry Store ... . So, not only did they victimize [the Davises] a first time by robbing them, they returned there a second time, and this time it was even more tragic. So, I ask the

4

> Court to fashion a sentence as fair and as just, and that sends a clear message: You may go out with the intention of ... committing a robbery, but if someone dies while you're committing that robbery, there are grave consequences to your actions.

(*Id.* at 69-70.) Immediately thereafter, the Court heard a victim impact statement by Gwendolyn Rawlins, the security guard at the Emerald Lady who was shot during the robbery. After explaining how that violent act permanently altered her life, she stated that "I feel to myself that with the fullness of the law, that these guys should pay for what they have done." (*Id.* at 71.)

Before sentencing Irvine, the Court asked for allocution regarding Devin, explaining that "[it] would like to ... impose sentence after hearing both allocutions ... ." (*Id.*) Obviously concerned that the brothers might be losing their individual identities in the Court's eyes, Devin's counsel expressed his "hope [that,] by [the Court's] hearing both allocutions, ... the Court is not fixed on a predisposition to sentence these brothers equally." (*Id.*) The Court responded: "Not necessarily. That's why I want to hear both of them." (*Id.*)

Devin's counsel then presented his sentencing position, focusing on Devin's rehabilitation since the incident. Devin personally expressed his remorse and requested, in light of his rehabilitation, "another chance to be part of society again" because he "[could] be a productive citizen in this community." (*Id.* at 83.) The government responded by saying, "[o]nce again, we're faced with an argument that, well, he has turned his life around." (*Id.* at 84.) From there, the prosecutor questioned how "someone

5

that evil, [could] have complete transformation in a four-year period" and whether "it [is] genuine." (*Id.* at 86.) He also asked "does the community at large have to wonder, once his sentence is completed and he's released back into the community, whether it's a genuine change or not?" (*Id.*) The government continued:

> We ask the Court to fashion a sentence that is fair, that is just, but that is also fair and just to Linda Davis [Larry's widow], to Larry Davis, to Gwendolyn Rawlins and their families. Because Devin Hodge had his chance to be a positive influence in the community. Larry Davis was a positive influence in this community. He doesn't get a second chance. His family doesn't get a second chance. Gwendolyn Rawlins' [sic] life has been completely traumatized. She doesn't have a second chance. She has to live with the scars and with the injuries inflicted by the events. Once again, Mrs. Rawlins has asked to speak to the Court, but I ask the Court to fashion a sentence that is fair and just to the victims in this case.

(*Id.* at 86-87.) Ms. Rawlins then addressed the Court a second time, again expressing her "hope that he [Devin] bear[s] the full penalty of the law." (*Id.* at 88.)

Thereafter, the Court addressed both brothers, indicating that it wanted them to know what Linda Davis had written to the Court. The Court read into the record a letter from Ms. Davis, in which she said that "[t]he people of St. Thomas need to be outraged enough to put a stop to terrorism and acknowledge the value of Larry's life," and she paraphrased a familiar quotation, saying, "for evil to triumph, good men need do nothing." (*Id.* at 91.) Speaking directly to the brothers, the Court added, "to the extent that it has any relevance to you two young men – I don't know it – but there seems to be an environment in St. Thomas, in particular, where the community is doing nothing and

6

allowing evil to triumph." (*Id*.) The Court then sentenced both brothers, simultaneously, to life sentences:

> [H]aving taken into consideration everything that's been said today, everything I know about the case and the terms of the plea agreement, I have no alternative in my mind, and in good conscience, but to sentence each of you to life in prison.

(*Id.* at 92.)

### B. Devin's Appeal

Devin timely appealed from the judgment of sentence, arguing that the government breached its plea agreement by implicitly recommending a life sentence, despite having agreed not to recommend a specific sentence.[4] *Devin Hodge*, 412 F.3d at 484. We agreed. First we concluded "that a reasonable person would have understood the plain language of Devin's plea agreement to mean that the government would not make any specific sentencing recommendation." *Id.* at 486-87. Next, we held that, based on the prosecutor's comments at the sentencing hearing:

> The government broke its promise. The prosecutor asked "whether the community at large [had] to wonder, once [Devin's] sentence is completed and he's released back into the community, whether [he made] a genuine change or not." The plain implication of that statement was that Devin should not be released back into the community. The prosecutor added that Devin "had his chance to be a positive influence in the community." The plain implication of that statement was that Devin should not be given another chance to be a positive influence in the community. The prosecutor

---

[4]Devin also argued that his plea colloquy was deficient because the Court was unaware that his plea was linked to Irvine's plea, however, we rejected that argument. *Devin Hodge*, 412 F.3d at 480.

stated that the murder victim did not get a second chance to be a positive influence in the community and urged the Court to "fashion a sentence that is fair and just to the victims in this case." The plain implication of that statement was that a fair and just sentence for Devin would deny him a second chance. In short, "[o]nly a stubbornly literal mind would refuse to regard the Government's commentary as communicating a [specific recommendation] on sentencing." By recommending a "life sentence in all but name," the government breached its agreement with Devin.

*Id.* at 487 (alterations in original) (footnote and citations omitted). In so reasoning, we pointed out that Ms. Rawlins's request that Devin "bear the full penalty of the law" only emphasized the prosecutor's effort to equate a sentence that is fair to the victims with a life sentence. *Id.* at 487 n.9. Accordingly, we vacated Devin's sentence and remanded "for the District Court to determine whether to grant specific performance or allow withdrawal of the guilty plea."[5] *Id.* at 487.

C.    *Irvine's § 2255 Petition*

Unlike Devin, Irvine failed to timely appeal his sentence. Irvine moved for collateral relief pursuant to 28 U.S.C. § 2255, claiming that the government breached its plea agreement with him and that his failure to appeal that issue was a result of his counsel's ineffectiveness. *Irvine Hodge*, 554 F.3d at 374, 379. The District Court denied Irvine's motion and Irvine appealed that denial. *Id.* at 376-77.

---

[5]On remand, Devin withdrew his plea but again pled guilty on November 22, 2006, after which he was sentenced to 450 months imprisonment. *United States v. Hodge*, 276 F. App'x 120, 121 (3d Cir. 2008).

8

We held that counsel was ineffective in failing to appeal Irvine's sentence. *Id.* at 381. We noted that counsel was clearly ineffective if Irvine had instructed him to appeal and counsel failed to do so. *Id.* at 380. However, we concluded that, regardless of whether Irvine had so instructed his counsel, Irvine had still established ineffective assistance because, "any rational defendant in his position would want to appeal." *Id.* Indeed, citing to *Devin Hodge*, we noted that "[t]he plausibility of one of [Irvine's] arguments for vacatur of his sentence is demonstrated by the fact that Devin, who received an identical plea agreement in a joint plea arrangement, and then, at a joint sentencing hearing, received an identical sentence, successfully argued that the government had breached the plea agreement by implicitly requesting a life sentence." *Id.* at 380 n.11; *see also id.* at 381 (explaining that "[Irvine] had nonfrivolous arguments that the government had breached its plea agreement with him" in light of "the parallels between his case and Devin's"). Accordingly, we "vacate[d] [Irvine's] sentence and remand[ed] the case for the re-entry of that sentence so that he [would have] the opportunity to file a direct appeal." *Id.* at 382 (footnote omitted). On remand, the District Court, in accordance with our instructions, reimposed the same life sentence on Irvine. This timely appeal followed.

## II.    Discussion[6]

Irvine asserts that he is entitled to vacatur of his sentence and remand because the government breached its plea agreement with him by implicitly recommending that he be given a life sentence. "[W]hether the government violated the terms of a plea agreement is a question of law subject to plenary review that may be raised on direct appeal despite the defendant's failure to raise the issue at sentencing." *United States v. Queensborough*, 227 F.3d 149, 156 (3d Cir. 2000). "We have made clear that the government has an obligation to adhere strictly to the terms of the bargain it strikes with defendants." *Id.* (quotations omitted). "In determining whether the government has violated the terms of the plea agreement, we ask 'whether the government's conduct is consistent with the parties' reasonable understanding of the agreement.'" *Id.* (quoting *United States v. Roman*, 121 F.3d 136, 142 (3d Cir. 1997)).

As in Devin's case, in which we construed the identical plea agreement, "a reasonable person would have understood the plain language of [the defendant's] plea agreement to mean that the government would not make any specific sentencing

---

[6]The District Court possessed jurisdiction over this case pursuant to 48 U.S.C. § 1612. We have jurisdiction pursuant to 28 U.S.C. § 1291. Irvine filed his appeal on April 1, 2009, even though the District Court did not enter its amended judgment on the docket until April 7, 2009. Although Irvine's appeal was premature, we have jurisdiction because the appeal ripened upon the District Court's entry of judgment. *See United States v. Console*, 13 F.3d 641, 649 n.3 (3d Cir. 1993) ("[Defendant] appealed on the day of the sentencing but before the judgment was entered. We nevertheless have jurisdiction."); *see also* FED. R. APP. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order – but before the entry of the judgment or order – is treated as filed on the date of and after the entry.").

recommendation." *Devin Hodge*, 412 F.3d at 486-87. Irvine argues that the government breached that agreement by implicitly requesting a life sentence through statements it made at the joint sentencing hearing. The government responds that any statements it made at sentencing concerning Devin did not "automatically extend[]" to Irvine because the two were addressed in separate presentations. (Appellee's Ans. Br. at 13.)

This would certainly be a simpler case if the government had in fact dealt with the brothers independently, but it did not. Instead, it treated the Hodge brothers as being effectively indistinguishable. From the outset, the prosecution approached the brothers as a single criminal unit. The government sought a package plea deal, tying the brothers' cases together, and entered into identical plea agreements with both of them. More importantly for our purposes, the prosecutor treated the brothers in a virtually identical manner at sentencing.

During the government's comments about Irvine, the prosecutor focused on the brothers as a twosome, repeatedly referring to the "evil" acts that "they" had committed. Specifically, the government stated that "[i]t makes absolutely no sense that *this defendant [Irvine] and his brother* would join in what happened at that jewelry store," "I don't think we will ever understand what was in the mind of *these two young men, Devin and Irvine Hodge*," "*[t]hey* decided to be lawless," and "*[t]hey* decided to do these evil acts, and now *they* have to face the consequences of those actions." (App. at 68-69 (emphasis added).) The government also noted that the brothers' joint criminal activity was not the first time that "they" had robbed the Emerald Lady, explaining that the

11

charged theft was the second time "they" had robbed the store and that "this time [the result] was even more tragic" than the first. (*Id.* at 70.) According to the prosecutor, this repeated lawless conduct necessitated a sentence that reflected the "grave consequences" of those actions. (*Id.*) By repeatedly referring to the brothers jointly, the prosecutor strongly implied that the two should be treated identically for sentencing purposes. By frequent repetition of the word "they," the prosecutor signaled to the Court that the two brothers were equally culpable and that statements made as to one brother were equally applicable to the other.

After hearing the government's presentation as to Irvine, the District Court decided to hear about Devin before sentencing either of the brothers. The prosecutor began his comments about Devin by stating "once again, we're faced with an argument that ... he has turned his life around," (*Id.* at 84,) thus tying the government's perspective on Devin back to what it had said about Irvine. Furthermore, although the government identified Devin by name, the overall gist of its comments about both brothers was that the Court should send a message that the brothers had exhausted their opportunities to be positive members of the community. (*See id.* at 69 (describing both defendants' acts as "evil"); *id.* at 86 (describing Devin as "evil").) While speaking about Devin, the prosecutor again referred to both of the brothers' acts, using the same language and themes that he had just used in his presentation regarding Irvine, namely, that the brothers should be given a sentence that reflected the severe harm done to the victims and the demand for retribution.

12

The government's treatment of the brothers as a unit evidently had its intended effect, because instead of sentencing them separately, the Court heard the defense allocutions and government rebuttals as to both brothers prior to sentencing either, and then the Court took "into consideration everything that's been said" when simultaneously sentencing them both to life imprisonment. (*Id.* at 92.)

Because the prosecutor treated the brothers as being the same for sentencing purposes, we cannot un-mix the sentencing comments the government made about the two.[7] *See United States v. Hall*, 515 F.3d 186, 200-01 (3d Cir. 2008) (acknowledging that, where husband and wife were both charged with identical criminal offense arising from the same conduct, prosecutor's statements as to wife necessarily referred to husband as well). Accordingly, we have considered the government's presentations as to both brothers in determining whether it breached the plea agreement with Irvine.

That being so, our decision on the question of breach has been informed by the result in *Devin Hodge*.[8] Again, the theme of the government's sentencing comments was

_____

[7]We emphasize that we are not suggesting that the government may not at the same time address a district court with sentencing positions as to multiple defendants in a case. There may be good reasons for the government to discuss several defendants as a group. Furthermore, if a prosecutor, at sentencing, distinguishes among defendants who are guilty of the same conduct, he or she will not be said to have breached a plea agreement with one defendant by virtue of statements directed to another defendant, even if those statements could apply to the first defendant. However, when a prosecutor treats defendants as in essence indistinguishable, the problems affecting the sentencing of one defendant may well affect the sentencing of another, as is the case here.

[8]Irvine also argues that *Devin Hodge* mandates the result here because *Devin Hodge* constitutes the law of the case as a prior appeal of a co-defendant who was sentenced at

13

that the Hodge brothers are evil individuals who had exhausted their opportunities to be positive influences in the community. (*See* App. at 68 ("[Irvine] had every opportunity to be a positive influence in this community"); *id.* at 86 ("Devin Hodge had his chance to be a positive influence in the community. ").) As was the case with Devin, "[t]he plain implication ... was that [Irvine] should not be given another chance to be a positive influence in the community," in other words, that he should be incarcerated for life. *Devin Hodge*, 412 F.3d at 487. The government focused on the brothers' "evil" acts and asked the Court to craft a "fair" and "just" sentence that reflects the impact of those actions on the victims, whose lives were either taken from them or changed forever. (*See* App. at 69 ("They decided to do these evil acts, and now they have to face the consequences of those actions."); *id.* at 70 (asking, after noting the "tragic" result of the brothers crimes, that the Court "fashion a sentence as fair and as just" and which sends a message that there are "grave consequences to your actions" if someone dies while you commit a robbery); *id.* at 87 (asking the Court, after noting that Larry Davis "doesn't get a

---

the same proceeding. Our circuit has recognized that, for the law of the case doctrine to apply, the same parties must have been involved in the earlier decision. *See In re W.R. Grace & Co.*, 591 F.3d 164, 174 (3d Cir. 2009) (refusing to consider prior opinion as law of the case because that opinion "did not involve the same parties and issues, as is required for application of the law of the case doctrine" (footnote omitted)); *see also United States v. Dexter*, 165 F.3d 1120, 1124 (7th Cir. 1999) ("We acknowledge that because [defendant] was not a party to the merits decision in the original appeal [by his co-defendant] he is not precluded from raising the same arguments anew that were raised by [his co-defendant]."). When two defendants appeal separately and their cases are not consolidated, they cannot both be said to be parties to each other's appeals. Accordingly, we reject Irvine's argument that the law of the case doctrine applies here.

14

second chance" and that Gwendolyn Rawlins's "life has been completely traumatized" to "fashion a sentence that is fair and just to the victims in this case.").) The totality of the comments implicitly requested a life sentence for both brothers, in violation of the plea agreement.[9] *See Devin Hodge*, 412 F.3d at 487 (concluding that "'[o]nly a stubbornly literal mind would refuse to regard the Government's commentary as communicating a [specific recommendation] on sentencing'" (quoting *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir. 1976) (alteration in original)); *see also id.* ("By recommending a life sentence in all but name, the government breached its agreement with Devin." (quotations and internal citation omitted)).

## III. Conclusion

Because, at sentencing, the government consistently spoke of Irvine and Devin as indistinguishable, we cannot accept its contention that the brothers should be treated differently on the question of whether the government breached their identical plea agreements. Accordingly, we will vacate Irvine's sentence and remand for the District Court to determine whether to grant specific performance or allow withdrawal of his guilty plea.

---

[9]We are focused here solely on what the prosecutor was permitted by the plea agreement to say. We express no opinion regarding the propriety of the sentence that Irvine actually received. In remedying a breach of the plea agreement, we imply nothing about what Irvine's sentence ought to be. The District Court is of course free on remand to consider that the culpability and hence the sentence to be borne by each brother may be different.