

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2009

# Irvine Hodge, Jr. v. USA

Precedential or Non-Precedential: Precedential

Docket No. 08-1918

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Irvine Hodge, Jr. v. USA" (2009). *2009 Decisions*. Paper 1811.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1811

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.08-1918
_____

IRVINE HODGE, JR.,

Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 04-cv-00044)
District Judge: Raymond L. Finch
_____

Argued December 8, 2008

Before:   FISHER, JORDAN and STAPLETON, *Circuit
Judges*,

(Filed: February 3, 2009)
_____

David R. Fine   [ARGUED]
K&L Gates
17 North Second Street
18th Floor, Market Square Plaza
Harrisburg, PA 17101
        *Counsel for Appellant*

Nelson L. Jones   [ARGUED]
Office of the United States Attorney
5500 Veterans Building, #260
Charlotte Amalie, St. Thomas
USVI 00802-6924
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Pursuant to identical plea agreements, Irvine Hodge, Jr. and his brother Devin[1] were sentenced at the same proceeding to life imprisonment for the murder of a jewelry store owner on St. Thomas in the U.S. Virgin Islands.  Devin's counsel timely

_____

[1]Throughout the remainder of this opinion, we refer to Irvine Hodge, Jr. as "Hodge" and to Devin Hodge as "Devin."

appealed his client's sentence. Hodge's counsel, however, filed a litany of motions but never a notice of appeal. In an earlier decision, we vacated Devin's sentence because the government had breached its plea agreement by implicitly requesting a life sentence. *United States v. Hodge*, 412 F.3d 479 (3d Cir. 2005). In the meantime, having lost the opportunity to directly appeal, Hodge moved for collateral relief under 28 U.S.C. § 2255 and argued, as his brother had, that the government had breached its plea agreement with him. The District Court denied Hodge's motion. For the reasons that follow, we will reverse the District Court's denial of Hodge's 2255 motion, vacate his sentence, and remand with instructions for the District Court to reenter the sentence so that Hodge has a second opportunity to file a direct appeal.

## I.     Background

In 1998, Hodge and his brother robbed a jewelry store and killed the store's owner. They were charged with first degree murder, in violation of 18 U.S.C. § 924(j)(1); interfering with commerce, in violation of 18 U.S.C. § 1951; and tampering with a witness by killing, in violation of 18 U.S.C. § 1512(a).

Hodge entered into a plea agreement with the government in April 2000. In exchange for his guilty plea to a charge of first degree murder and his promise to make restitution for the robbery, Hodge obtained from the government a promise to seek dismissal of the remaining charges, to recommend that the sentencing judge give him credit for accepting responsibility for the crime, and "to make no specific sentencing recommendation other than to request that the sentence be within the guideline range." (App. at 47-50.) As part of a "package deal," Devin signed an identical plea

4

agreement. *See Hodge*, 412 F.3d at 480, 482. On May 2, 2000, the District Court of the Virgin Islands conducted a joint change-of-plea hearing for Hodge and Devin, at which the brothers were represented by separate counsel.[2]

The following month, Hodge and the government entered into a supplemental plea agreement. Under its terms, Hodge "agree[d] to provide truthful, complete, and accurate information and testimony" and to cooperate fully with an ongoing government investigation. (App. at 107-11.) The government, in turn, promised to "[m]ake the nature and extent of [Hodge's] cooperation known to the Court" and to "[m]ake a motion to allow the Court to depart from the Sentencing Guidelines," provided that Hodge had fulfilled the conditions of the deal. (App. at 111.) The government retained sole

_____

[2]Hodge was represented by the same attorney at all times relevant to this appeal.

5

discretion to decide whether and to what degree Hodge had cooperated.

The District Court sentenced Hodge and Devin at a single proceeding on March 6, 2002. In response to Hodge's allocution, in which he expressed remorse for his crime, the prosecutor remarked:

> [I]t always amazes me that once a person gets convicted and spends some time in jail, pending sentencing, two things happen. They usually find religion, and they usually find great remorse. ... Whether the remorse is genuine or not, I leave for a higher power to determine. But at some point this defendant has to realize that there are grave consequences for your actions.

(App. at 156.) He then "ask[ed] the Court to fashion a sentence as fair and as just, and that sends a clear message: You may go out with the intention of [] committing a robbery, but if someone dies while you're committing that robbery, there are grave consequences to your actions." (App. at 157.) After Devin

6

allocuted, the prosecutor made similar statements.[3]  The record

does not indicate that the government made any mention to the

Court of Hodge's cooperation, and the government did not file

a motion to allow the Court to depart from the sentencing

guidelines.  Hodge and Devin each were sentenced to life

imprisonment.

After announcing the sentences, the District Court

instructed Hodge and Devin that they had ten days in which to

file their notices of appeal.  Devin timely filed his notice of

appeal, and, as earlier noted, we vacated his sentence, holding

that the government had breached the plea agreement by

---

[3]For example:  "But the point is, Your Honor, that someone
that evil, to have complete transformation in a four-year period,
it begs the question, is it genuine or isn't it? ... We ask the Court
to fashion a sentence that is fair, that is just ... .  Because Devin
Hodge had his chance to be a positive influence in the
community.  Larry Davis [the deceased jewelry store owner]
was a positive influence in this community.  He doesn't get a
second chance."  (App. at 173-74.)

implicitly requesting a sentence of life imprisonment. *Hodge*, 412 F.3d at 487. On remand, the District Court resentenced Devin to a term of 450 months.

Unlike his brother, Hodge did not file a direct appeal. Instead, on March 11, 2002, his counsel filed a motion to correct Hodge's sentence pursuant to Fed. R. Crim. P. 35. That same day, the Court entered an amended judgment of sentence to correct certain clerical errors.[4] On April 2, 2002, Hodge's counsel then filed what was styled as a "Motion to Have Conceded the Motion to Correct Sentence" and, eight months later, something he called an "Information Motion." In the Information Motion, Hodge's counsel noted:

> That I am advised by Defendant that he recently sought, *pro se*, to have the Court appoint counsel

---

[4]The record does not indicate what errors, in particular, the District Court corrected.

for his appeal. However, Defendant was advised that no notice of appeal was filed.

Undersigned counsel is of the opinion that the post[-]trial motion[s] filed by Defendant on March 11, 2002 and April 2, 2002 are appropriate for an Order of the District Court before Defendant's timeliness for filing an appeal, if necessary, can be ascertained. Otherwise the Defendant is held in the procedural [l]imbo [in which] he now finds himself.

(App. at 193.)

On March 3, 2003, Hodge wrote to his attorney, expressing confusion as to why an appeal had never been filed in his case and asking counsel to "[d]o whatever needs to be done so that I can have a chance to 'appeal' the life ... sentence I received on March 6, 2002." (App. at 195.) Attached to the letter was a notice that Hodge had received from this Court telling him that we could not consider a motion to file his appeal out of time because the District Court had to address such a motion in the first instance.

9

Hodge proceeded *pro se* to request the District Court to allow him to file a notice of appeal out of time, but the Court denied that request on December 31, 2003. On January 7, 2004, the District Court denied the "Motion to Have Conceded the Motion to Correct Sentence." The Court contemporaneously directed Hodge to notify it by February 16 whether he wanted to have his earlier motion to correct his sentence recharacterized as a motion for collateral relief under 28 U.S.C. § 2255.

On January 30, 2004, Hodge's counsel filed a document entitled "Post-Trial Motion for Correction of Error and Reconsideration," in which he wrote that, should the Court decline to reconsider its December 31, 2003 Order, Hodge wished to have the motion to correct his sentence recharacterized as a 2255 motion. Although the record is unclear, it seems that the Court must have denied the motion for reconsideration.

10

On March 1, Hodge's counsel timely filed a document in support of Hodge's 2255 motion, using a standardized form provided by the Court.[5] In it, he argued, first, that the government had breached its plea agreement with Hodge by not advising the Court of the substantial assistance that Hodge had provided; and, second, that Hodge "was not advised that his right to appeal would terminate on April 24, 2002. That knowledge did not come until the District Court made its decision of December 31, 2003." (App. at 44.)

On August 16, 2005, Hodge, acting *pro se*, filed a "Motion to Submit Memorandum of Law in Support of § 2255 Petition" (the "Supplemental Memorandum"), in which he provided argument in support of his claims that the government

---

[5]Hodge claims, and the government does not dispute, that the District Court told him that he would have thirty days to supplement his claims, after providing notice that he chose recharacterization.

11

had breached the plea agreement and that he was denied the right to appeal. Besides arguing that the government had failed to advise the Court of his cooperation, Hodge claimed, in keeping with our then-recently issued opinion in his brother's appeal, that the government had also breached its agreement by tacitly recommending that he receive a life sentence. Most importantly for this appeal, Hodge also argued that, "as a result of trial counsel's erroneous advice and deficient performance [, movant] was denied his due process right to a direct appeal." (App. at 210.) Specifically, he claimed:

> [T]rial counsel promised ... he would file a prompt notice of appeal. However, contrary to his promise[,] trial counsel instead filed a Rule 35 Motion to Correct Sentence ... . Counsel went on to inform [movant] that he did not have to worry about the time period in which to file his appeal because the clock would not begin to tick until the Court responded to the Motion to Correct Sentence.

(App. at 210.)

12

The Court denied Hodge's 2255 motion on September 19, 2007. Treating the Supplemental Memorandum as an attempt to amend that motion, the Court concluded that Hodge was trying to raise an ineffective assistance claim that was "new and distinct" from the right-to-appeal claim raised in the 2255 motion. Thus, the Court held, the ineffective assistance claim was untimely. It further held that all of the claims in the 2255 motion were procedurally defaulted because Hodge had not raised them on direct appeal and he could not establish actual innocence or cause for the default and consequent prejudice.

Hodge timely appealed the District Court's decision. On May 30, 2008, we issued a certificate of appealability on two issues: (1) whether the District Court erred in not allowing the ineffective assistance and breach-of-plea-agreement claims that Hodge raised in his Supplemental Memorandum to relate back to his timely 2255 motion, and (2) whether the assistance of

13

Hodge's counsel was ineffective and, thus, constituted cause for his procedural default. We now hold that the District Court erred in not allowing Hodge's ineffective assistance claim to relate back to the original 2255 motion and that his counsel's failure to initiate the appeals process sunk to a level of ineffective assistance excusing Hodge's procedural default. Because we remand the case for the reentry of Hodge's initial sentence so that he can file a direct appeal, we need not reach the question of whether his claims about breaches of his plea agreement relate back to his 2255 motion.

## II. Jurisdiction and Standard of Review

The District Court of the Virgin Islands exercised jurisdiction over this matter under 28 U.S.C. § 2255 and 48 U.S.C. § 1612. Our jurisdiction arises under 28 U.S.C. § 1291.[6]

---

[6]We granted a certificate of appealability on the aforementioned issues pursuant to 28 U.S.C. § 2253(c), after

14

We review the District Court's interpretation of the relation back doctrine *de novo*. *See United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto. Ctr.*, 501 F.3d 283, 286 (3d Cir. 2007) (conducting plenary review of district court's interpretation of procedural rules); *Hartmann v. Carroll*, 492 F.3d 478, 480 (3d Cir. 2007) ("Our review of the timeliness of a federal habeas application is plenary."). We also undertake plenary review of a district court's conclusions as to procedural default. *Fahy v. Horn*, 516 F.3d 169, 179 (3d Cir. 2008).

---

applying the standard set forth in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

## III.    Discussion

### A.    Relation Back

Hodge concedes that he did not file his Supplemental Memorandum within the one-year statute of limitations for habeas petitions prescribed by 28 U.S.C. § 2255(f).  He argues, however, that the District Court should have allowed the claims he made therein, including the ineffective assistance claim, to relate back to his timely filed 2255 motion.  We agree.  In concluding otherwise, the District Court applied an incorrect legal standard.

Under Federal Rule of Civil Procedure 15(c)(1)(B), a party may properly raise a new claim or defense that would have been barred by the statute of limitations if the claim or defense "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  In *United States v. Thomas*, 221 F.3d 430 (3d Cir. 2000), we held that the

16

relation back rule applies to 2255 motions "insofar as a District Court may, in its discretion, permit an amendment ... to provide factual clarification or amplification ... as long as the [motion] itself was timely filed and the [movant] does not seek to add an entirely new claim or theory of relief." *Id*. at 436. Because Thomas sought only to amplify his existing claims with factual support, we expressly left open "whether a *new* claim would be proscribed if that claim 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Id*. at 436 n.4 (quoting Fed. R. Civ. P. 15(c)(1)(B)) (emphasis added). However, we did note that at least two circuits permitted such new claims to relate back. *Id*. (citing *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)). The number of circuits permitting relation back under those

17

circumstances increased over the ensuing years,[7] and, in 2005, the Supreme Court in *Mayle v. Felix*, 545 U.S. 644 (2005), resolved competing definitions of "conduct, transaction, or occurrence" in the habeas context, holding that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id*. at 664.

The District Court seems to have overlooked *Mayle* in considering Hodge's Supplemental Memorandum. Giving no mention to that Supreme Court decision, it held that the ineffective assistance claim in the Supplemental Memorandum was not a "factual clarification or amplification" of the right-to-appeal claim set out in the 2255 motion, but was rather a new

---

[7]*E.g., United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002); *United States v. Espinoza-Saenz*, 235 F.3d 501 (10th Cir. 2000); *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000).

18

and distinct claim that did not relate back under the *Thomas* interpretation of Fed. R. Civ. P. 15. (App. at 7-8.) The District Court thus applied the wrong standard. After *Mayle*, it is apparent that new claims can relate back if they arise from the same conduct, transaction, or occurrence described in a timely filed 2255 motion. Therefore, the Court should have asked – as we ask now – whether both the ineffective assistance claim in Hodge's Supplemental Memorandum and the right-to-appeal claim in his original 2255 motion "are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664.

The answer to that question is clearly "yes." Understandably using the passive voice, Hodge's counsel acknowledged that his client had not been "advised that his right to appeal would terminate on April 24, 2003. That knowledge did not come until the District Court made its decision of December 31, 2003." (App. at 44.) In his Supplemental

Memorandum, Hodge more pointedly explained that his counsel was the one who had erroneously advised him that the filing of a motion to correct his sentence would toll the time for filing an appeal. It is true, as the government notes, that *Mayle* forecloses the relation back of a new, untimely claim when it is "supported by facts that differ in both time and type from those the original pleading set forth." 545 U.S. at 650. But the facts undergirding Hodge's ineffective assistance claim differ in neither type nor time from those supporting his right-to-appeal claim: both concern the erroneous advice that Hodge's counsel provided about the filing deadline for the appeal.[8]

---

[8]For this reason, it can be argued that Hodge raised an ineffective assistance claim in his original 2255 motion. The allegedly ineffective attorney who authored that motion essentially admitted that his own representation was the reason that Hodge did not file a timely appeal. The language he used comes as close to a *mea culpa* as one could realistically expect.

20

Having determined that Hodge's ineffective assistance claim relates back to his timely filed 2255 motion, we next address whether his counsel's performance constituted cause for the procedural default of his claims concerning the government's alleged breaches of the plea agreement.

## B. Procedural Default

Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Put differently, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal. *Id.* But courts will exempt a movant from that rule if he can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default. *Id.* at 622. On appeal, Hodge argues, as he did below, that his

21

counsel's ineffective assistance – in the form of neglecting to file a direct appeal of his sentence – satisfies the cause and prejudice exception to procedural default. We agree.[9]

### 1.    Cause

Ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause for a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Wise v. Fulcomer*, 958 F.2d 30, 34 n.9 (3d Cir. 1992). The question before us, then, is whether it was constitutionally ineffective for Hodge's counsel not to file an appeal of Hodge's life sentence.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the

---

[9]We recognize that the District Court never addressed the merits of Hodge's ineffective assistance claim, holding instead that it did not relate back to his original 2255 motion. However, "[b]ecause the record has been sufficiently developed for us to resolve this legal issue, we need not remand to the District Court to consider it in the first instance." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 306 (3d Cir. 1999).

Supreme Court held that every criminal defendant has a Sixth Amendment right to "reasonably effective [legal] assistance." *Id*. at 687. Pursuant to *Strickland*'s now-familiar test, an attorney renders ineffective assistance when his performance "f[alls] below an objective standard of reasonableness," given the particular circumstances of the case at hand. *Id.* at 688. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court applied *Strickland* to an attorney's failure to file a notice of appeal. At the outset of its analysis, the Court recognized that a lawyer who disregards his client's explicit instructions to appeal renders ineffective assistance. *Id.* at 477. However, it rejected, as inconsistent with *Strickland*, the Ninth Circuit's rule that it was *per se* unreasonable for an attorney not to file a notice of appeal on behalf of a client unless the client had told the attorney not to appeal. *Id.* at 478. Instead, under *Flores-Ortega*, reviewing courts must conduct a "circumstance-specific reasonableness

inquiry" regarding counsel's failure to file a notice of appeal, whenever the client did not express a desire to appeal. *Id.*

That inquiry begins with the issue of attorney-client consultation. *Id.* "If counsel has consulted with the defendant [about his right to appeal], the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* But if counsel has not consulted with the defendant and has not filed a notice of appeal, he has performed below the constitutional threshold "when there is reason to think either (1) that a rational defendant would want to appeal ..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

Of course, an attorney may not speak cursorily with a client about an appeal and call it a "consultation." Indeed, the

*Flores-Ortega* opinion defines "consulting" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. It is, moreover, clear from *Strickland* that the advice an attorney dispenses during consultation must meet an "objective standard of reasonableness."

In the case at hand, Hodge contends that he told his counsel to file an appeal, and his counsel failed to do so. According to the government, however, the record contains insufficient evidence to establish what, if anything, Hodge told his counsel regarding an appeal before the filing period expired. We need not resolve who has the better of this debate.[10] Nobody

_____

[10]If we did think it necessary to answer that question, we would ask the District Court to do so in the first instance. However, we note that the record is replete with evidence corroborating Hodge's claim that he told his counsel to appeal

25

contends that Hodge told his lawyer that he did not want to appeal. Thus, on this record, the question boils down to whether Hodge expressly said that he wanted to appeal, whether he gave his lawyer vague instructions, or whether he said nothing at all. The government does not contend – and it seems implausible – that he would say nothing, so we are left with the first and second alternatives. If counsel failed to follow Hodge's

---

but that his instruction was ignored, as counsel chose instead to file several motions. In the letter that Hodge sent to his lawyer in March 2003, Hodge expressed confusion as to the state of his appeal. In no uncertain terms, he asked counsel to "[d]o whatever needs to be done so that I can have a chance to 'appeal' the ... sentence I received ... while under the counsel of you and your associates." (App. at 195.) Furthermore, the papers that counsel filed pursuant to the Rule 35 Motion betray his misunderstanding that the period for direct appeal could be tolled by motions practice. Most glaringly, the "Information Motion" suggests that the Rule 35 motion is "appropriate for an Order of the District Court before Defendant's timeliness for filing an appeal, if necessary, can be ascertained. Otherwise the Defendant is held in the procedural [l]imbo [in which] he now finds himself." (App. at 193.)

instructions, his assistance was clearly ineffective under *Flores-Ortega*. If, on the other hand, counsel was unsure about Hodge's wishes, the consultation and subsequent service he provided was still deficient under *Flores-Ortega*, as well as in violation of *Strickland*'s reasonableness standard, because any doubt under these circumstances should have been resolved in favor of appeal. Given the force of Hodge's argument that the government failed to abide by the terms of its plea agreement, we think it beyond cavil that any rational defendant in his position would want to appeal. Counsel himself recognized that and failed to file an appeal only because he mistakenly believed his motions practice had put off the pertinent deadline. In short, competent counsel would have timely appealed.

We are mindful that "the distorting effects of hindsight" necessitate a highly deferential review of counsel's performance. *Strickland*, 466 U.S. at 689. And we agree that

27

"[t]here are countless ways to provide effective assistance in any given case." *Id.* However, we cannot envision a scenario, aside from following a client's thoroughly informed and perfectly explicit direction, where it would be reasonable for an attorney not to appeal the life sentence of a client with a nonfrivolous argument[11] as to why the sentence is unlawful.

## 2. Prejudice

We turn next to the question of prejudice. To establish prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed." *Flores-Ortega*,

---

[11]The plausibility of one of Hodge's arguments for vacatur of his sentence is demonstrated by the fact that Devin, who received an identical plea agreement in a joint plea arrangement, and then, at a joint sentencing hearing, received an identical sentence, successfully argued that the government had breached the plea agreement by implicitly requesting a life sentence. *Hodge*, 412 F.3d at 487.

528 U.S. at 484. In making that determination, the reviewing court considers the totality of the circumstances surrounding the representation. "Nonetheless, evidence that there were nonfrivolous grounds for appeal ... will often be highly relevant." *Id.* at 485.

As indicated above, we think the prejudice here is manifest. Hodge had nonfrivolous arguments that the government had breached its plea agreement with him. Given the parallels between his case and Devin's, we agree that "[i]t is difficult to imagine that one brother would take an appeal and the other would not." (Hodge Reply Br. at 12.) Hodge's prejudice claim finds additional support in the fruitless motions practice conducted by his lawyer. Those motions were aimed at having his sentence "corrected," which implies that there was some belief by his counsel that there had been an error. Furthermore, Hodge's March 2003 letter to counsel indicates

29

that Hodge had been under the impression that his appeal was in process. When he discovered it was not, he asked his attorney to "[d]o whatever needs to be done so that I can have a chance to 'appeal' the life ... sentence I received on March 6, 2002." (App. at 195.) Thereafter, without the assistance of counsel, he asked the District Court to allow him to file a notice of appeal out of time. All things considered, we find it reasonably probable, if not obvious, that Hodge would have appealed his sentence if he had enjoyed effective representation.

The government seems to argue that, even if his counsel's assistance was constitutionally ineffective, it did not prejudice Hodge because the District Court told him at sentencing that "if he did not file a notice of appeal *with or without* counsel, he would lose that right." (Gov't Brief at 15 (emphasis added).) This contention conflates the sentencing court's obligation, under Fed. R. Crim. P. 32(j), to inform the

defendant of his right to appeal and an attorney's responsibility, under the Sixth Amendment, to provide effective assistance in the initiation of his client's appeal. By that untenable logic, the government would absolve defense counsel of a constitutionally imposed duty merely because the District Court paraphrased a rule of criminal procedure. Needless to say, the responsibilities of counsel are not so lightly cast aside. Hodge was prejudiced by his counsel's failure to initiate the appeals process, regardless of the District Court's sentencing colloquy.

## IV. Remedy

We have determined that Hodge's ineffective assistance claim relates back to his timely filed 2255 motion, that his counsel's deficient performance constituted cause for his failure to file a direct appeal, and that he was prejudiced by that failure. Now we must prescribe an appropriate remedy.

31

In *United States v. Shedrick*, 493 F.3d 292 (3d Cir. 2007), a defendant who had pled guilty to being a felon in possession of a firearm appealed the district court's denial of his 2255 motion. As does Hodge, Shedrick argued that his counsel had been ineffective in failing to file a direct appeal, which, in his case, involved a sentencing enhancement that the Court had applied under the United States Sentencing Guidelines. *Id.* at 300-01. After holding that counsel's assistance was ineffective under *Flores-Ortega* because Shedrick had clearly indicated that he wanted to appeal the enhancement, we decided to remand the case and instruct the district court to re-enter Shedrick's initial sentence. *Id.* at 302-03. Such a disposition "put Shedrick in the same position he would have been in if he had had effective assistance of counsel." *Id.* at 303.

Today, we grant Hodge the same remedy. We will vacate his sentence and remand the case for the re-entry of that

sentence so that he has the opportunity to file a direct appeal.[12]

## V.     Conclusion

For the foregoing reasons, the District Court erred in declining to permit Hodge's ineffective assistance claim to relate back to his original 2255 motion, and Hodge has demonstrated that his counsel was ineffective in failing to file a direct appeal.  Therefore, we will reverse the District Court's denial of Hodge's 2255 motion, vacate his sentence, and remand the case for re-entry of that sentence, so that Hodge has a second chance to seek direct review.[13]

---

[12]It might reasonably be asked whether directing re-entry of Hodge's original sentence makes sense, since we have already found reversible error in his brother's closely related case. 412 F.3d 479. We cannot assume, however, that the cases are identical, and thus we think it best to reset the clock for Hodge's appeal, so that his case can be dealt with on its own merits.

[13]The Court acknowledges with appreciation the excellent *pro bono* service rendered by counsel for Hodge on this appeal.