An appropriate Order follows.

Gary **BATTAGLINI**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

**CRIMINAL ACTION NO. 09-496-11**
**CIVIL ACTION NO. 14-4170**

United States District Court,
E.D. Pennsylvania.

Signed July 29, 2016

Gary Battaglini, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge

Petitioner Gary Battaglini ("Petitioner"), a federal prisoner, seeks habeas relief under 28 U.S.C. § 2255. Among other things, Petitioner claims that his privately retained trial counsel, Lawrence O'Connor, Jr., Esquire ("Counsel"), provided ineffective assistance of counsel in violation of the Sixth Amendment when he failed to file a post-sentencing appeal. For the reasons set forth below, the Court will grant Petitioner's habeas petition as to his claim of ineffective assistance of counsel, which is set forth in Ground 1 of his petition, based on Counsel's constitutionally deficient consultation with Petitioner concerning whether to take an appeal and his concomitant failure to file a post-sentencing appeal. Accordingly, the Court will vacate the sentence and order the resentencing of Petitioner (in order to allow Petitioner to take an appeal).

## I. PROCEDURAL HISTORY

On January 5, 2011, a federal grand jury returned a superseding indictment charging Petitioner with Racketeer Influenced and Corrupt Organization Act ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 1), as well as conducting an illegal gambling business, in violation of 18 U.S.C. § 1955 (Count 49), in connection with his involvement in the Philadelphia La Cosa Nostra family ("LCN"), an organized crime ring, and its criminal activity over a number of years. ECF No. 3. A third superseding indictment was unsealed on July 25, 2012, charging Petitioner with the same offenses. ECF No. 723. Thirteen other defendants were charged in the same indictment. Id.

Petitioner proceeded to trial with six other defendants[1] beginning in October

---

1. Those defendants are Anthony Staino, Jr.; Joseph Ligambi; Joseph Massimino; George Borgesi; Damion Canalichio; and Joseph Licata.

2012. Although another privately retained attorney—Louis T. Savino, Jr., Esquire—represented Petitioner for much of the pretrial proceedings, see ECF No. 835, Counsel represented Petitioner during the trial and through sentencing, see ECF No. 866.

The trial, which lasted over four months, included testimony from dozens of FBI agents, cooperators, and other government witnesses. See United States v. Massimino, 641 Fed.Appx. 153, 2016 WL 192652, at *1 (3d Cir.2016) (describing the trial). The Government also introduced "voluminous amounts of wiretap material and other covertly recorded conversations." Id. "The evidence on the whole established that the Philadelphia LCN, as an organization, exercised control over illegal gambling, bookmaking, and loansharking operations, all bolstered by implicit or explicit threats of physical violence." Id.

During the trial, the Government contended that Petitioner was an LCN "associate"[2] who participated in loansharking and illegal bookmaking activities in furtherance of the racketeering conspiracy. Throughout this case, the Government grouped Petitioner's conduct in furtherance of the conspiracy into four categories: (1) extortion of Michael Orlando, (2) extortion of Peter Albo, (3) extortion of Joseph Comerer, and (4) illegal gambling and sports bookmaking.

On February 5, 2013, following several weeks of deliberation, a jury convicted Petitioner of racketeering conspiracy (Count 1) and acquitted him of conducting an illegal gambling business (Count 49). ECF Nos. 1167, 1182.

Following the trial, Counsel filed a motion for a new trial and judgment of acquittal on Petitioner's behalf. ECF No. 1350. In the motion, Petitioner asserted that (1) the evidence at trial was insufficient to sustain the jury's verdict on RICO conspiracy; (2) the Court erred in admitting consensual recordings made by Albo, where Albo did not testify at trial; (3) the court erred in limiting cross-examination of FBI agents concerning matters relating to their credibility; and (4) the Court erred in failing to declare a mistrial after it learned that the jury was exposed to extraneous information. Id. On July 8, 2013, the Court denied Petitioner's post-trial motion.[3] ECF No. 1386.

Prior to sentencing, Petitioner, through Counsel, filed objections to the Pre-Sentence Investigation Report ("PSI"). In particular, Petitioner objected to the inclusion of illegal sports bookmaking as relevant conduct, because the jury acquitted him of the substantive charge of conducting an illegal gambling business in Count 49. He also objected to the inclusion of offense conduct relating to extortionate credit transactions with Orlando, arguing that the trial evidence did not support it. The Court ultimately overruled both objections at the sentencing hearing on July 12, 2013, ECF No. 1692, and sentenced Petitioner to ninety-six months' (eight years') imprisonment, three years' supervised release, a $1000 fine, and a $100 special assessment,

---

**2.** During the trial, "[r]etired FBI Special Agent Joaquin Garcia explained that each LCN family has a boss, an underboss, and a 'consigliere.' " Massimino, 641 Fed.Appx. 153, 2016 WL 192652, at *1 n. 2. "Below them fall 'caporegimes,' who serve as crew captains; 'made' members, also called 'soldiers'; and associates, whom Garcia described as 'worker bees.' " Id.

**3.** As to the contention that the Court erred in declining to excuse two jurors who were exposed to extraneous information during deliberation, the Court issued a memorandum setting forth its reasoning for denying the motion in United States v. Canalichio, No. 09–496–08. ECF No. 1389.

ECF No. 1399. The Judgment was entered the same day. Id.

Following entry of the Judgment against him, Petitioner did not file a notice of appeal. Conversely, three of Petitioner's co-defendants who were also convicted—Massimino, Canalichio, and Staino—filed direct appeals to the Third Circuit.[4] See generally Massimino, 641 Fed.Appx. 153.

On July 7, 2014, roughly a year after his sentencing, Petitioner filed a pro se motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. ECF No. 1679. In his § 2255 petition, Petitioner alleges six ways in which Counsel provided constitutionally ineffective assistance. First, he claims that Counsel failed to file a notice of appeal. Pet. at 5-A; Mem. Law at 7-22. Second, he argues that Counsel failed to identify, investigate, and procure exculpatory evidence related to Orlando. Pet. at 5-A; Mem. Law at 22-27. Third, he asserts that Counsel failed to argue grounds to exclude statements and consensual recordings made by Albo. Pet. at 5-A; Mem. Law at 27-32. Fourth, he submits that Counsel failed to object to portions of defense counsel Edwin Jacobs' opening statement conceding Petitioner's guilt on an element of the RICO conspiracy charge. Pet. at 5-A; Mem. Law at 32-36. Fifth, he contends that Counsel failed to object to several inflammatory statements made by witness Peter Caprio.[5] Pet. at 5-A; Mem. Law at 36-38. Sixth, and finally, he maintains that Counsel failed to argue on Sixth Amendment and Apprendi grounds that use of acquitted conduct to increase Petitioner's sentence was an invasion of the jury's exclusive province. Pet. at 5-B; Mem. Law at 39-42.

The Government filed a response in opposition to the petition. ECF No. 1687.

Thereafter, Petitioner filed a reply, ECF No. 1688, and later supplemental briefs, ECF Nos. 1719, 1722. On March 1, 2016, the Court appointed Hope Lefeber, Esquire, to represent Petitioner in connection with his § 2255 petition. ECF No. 1744. The Court held an evidentiary hearing for May 18, 2016, during which it received evidence only as to Petitioner's claim of ineffective assistance of counsel for failure to file a direct appeal (Ground 1). ECF No. 1758. Following the hearing, the Court ordered that all other claims in Petitioner's habeas petition would be held in abeyance until the disposition of Ground 1. ECF No. 1761. Petitioner's counsel then filed a supplemental brief as to Ground 1 of his habeas petition, ECF No. 1763, and the Government filed a response thereto, ECF No. 1764. Accordingly, Ground 1 of the petition is now ripe for disposition.

## II. LEGAL STANDARD

A federal prisoner "claiming the right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. Id. An evidentiary hearing on the merits of a prisoner's claims is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. Id. § 2255(b).

---

4. The Third Circuit consolidated the three appeals and affirmed all of their convictions and sentences on January 15, 2016. See generally Massimino, 641 Fed.Appx. 153.

5. Petitioner later withdrew this argument. ECF No. 1722 at 2.

■ Because collateral review under 28 U.S.C. § 2255 is not a substitute for direct review, a petitioner ordinarily may raise, in a § 2255 petition, only claims that he raised on direct review. Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A petitioner has procedurally defaulted all claims that he neglected to raise on direct appeal unless he can prove that he is actually innocent of the crime for which he was convicted or that there is a valid cause for the default, as well as resulting prejudice. Id. at 621–22, 118 S.Ct. 1604. Ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause to excuse a procedural default. McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

In Strickland v. Washington, the Supreme Court held that every criminal defendant has a Sixth Amendment right to "reasonably effective assistance." 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697, 104 S.Ct. 2052. Therefore, as "fundamental fairness is the central concern of the writ of habeas corpus," "[t]he principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687, 104 S.Ct. 2052.

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687–88, 104 S.Ct. 2052. The Court's "scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. 2052. Accordingly, there is a "strong presumption that coun-sel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690, 104 S.Ct. 2052. Next, the Court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To establish prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

## III. FINDINGS OF FACT

The following shall constitute the Court's findings of fact as to the evidence presented at the May 18 hearing, wherein both Petitioner and Counsel testified:

Petitioner testified that on July 12, 2013, immediately after his sentencing hearing, he met with Counsel at the Federal Detention Center in Philadelphia ("FDC") to discuss the possibility of filing an appeal. Evidentiary Hr'g Tr. at 7:11-23, 28:4-29:6, May 18, 2016, ECF No. 1766. Upon ending their meeting, Petitioner and Counsel "left . . . open" the question of whether to file an appeal. Id. at 8:7-9, 29:23-30:2.

Petitioner testified that he continued to consider filing an appeal after he was moved into his cell at the FDC, and at some point, he decided that he wished to proceed with an appeal. Id. 8:11-18. He then attempted to contact Counsel on Counsel's cell phone several times over the course of the next few days, to no avail. Id.

at 8:19-15. Thereafter, Petitioner was transferred to another federal prison facility; he was unable to communicate with Counsel during the transfer process.[6] Id. at 9:16-10:5. Petitioner never spoke to Counsel again after his post-sentencing meeting. Id. at 10:22-25.

Counsel likewise testified that he met with Petitioner at the FDC immediately after the sentencing hearing. Id. at 51:25-52:9. Counsel testified that during the meeting, he advised Petitioner of potential grounds for appeal, which included the same issues that Petitioner raised in his post-trial motion. Id. at 52:10-15. Counsel stated that during that meeting, Petitioner never affirmatively indicated that he wanted Counsel to file an appeal on his behalf. Id. at 52:19-25. Indeed, counsel agreed that at the conclusion of the meeting, Petitioner's decision concerning whether to appeal was left open, because Petitioner "needed to know what was going to happen with his state case." Id. at 73:20-74:8.

During the relevant time period, Petitioner had a criminal case for drug charges pending in Pennsylvania state court, wherein he hoped to obtain a sentence that was "concurrent and coterminous" with his federal sentence, such that he could serve his sentences for both his federal and state crimes in federal prison. Id. at 16:22-18:7. Counsel testified that it "seemed very important" to Petitioner to serve all of his time in a federal facility and "not ... do time in state prison." Id. at 60:17-24.

Counsel testified that he had no further communication with Petitioner after their meeting at the FDC on the day of sentencing. Id. at 80:1-3. He stated that he was not aware that Petitioner had tried to reach him by phone. Id. at 80:4-9.

On July 19, 2013, about a week before the deadline to file the notice of appeal, Counsel e-mailed Petitioner's wife, Leishana Battaglini—with whom he had numerous contacts during the course of trial preparation and the trial—about the possibility of filing the appeal:

> Hi Shana—I just want to remind you that the deadline to file notice of appeal is next Friday, August 26, 2013. Please let me know by the end of the day Wednesday, August 24, 2013 if you want me to prepare the notice of appeal. The filing fee is $455.00. I hope all I [sic] well with you and your boys.
>
> Thanks, Larry O'Connor

Gov't Ex. 2. In response, Mrs. Battaglini asked for clarification that Counsel meant July 26, rather than August 26. Id. Counsel confirmed by e-mail that he indeed meant July 26, and in the same e-mail, provided additional explanation as to the purpose of the notice of appeal:

> Yes, I do mean July 26,[ ]2013. Thanks for clarifying. This is to notify the courts and US Attorneys of your intention to appeal the CONVICTION, not just the sentence. Notice must be given within 14 days of final judgment of sentence.

Id.

Mrs. Battaglini then responded that making the decision whether to appeal was "kind of hard without a [sic] answer on the State Case" and that she would "have to ask [Petitioner]." Id. Several days later, Mrs. Battaglini e-mailed Counsel, stating "Thanks Larry for everything but we we [sic] not appealing." Id.

Counsel testified at the evidentiary hearing that Mrs. Battaglini's final e-mail was the "basis" upon which he decided not to file the notice of appeal. Evidentiary

---

**6.** The parties did not present evidence during the evidentiary hearing as to Petitioner's transfer history while in federal custody or where he was held during the time period pertinent to the issues in this case.

Hr'g Tr. at 57:24-58:1. He stated that "based on [Mrs. Battaglini's] level of involvement" in her husband's case, he "felt it reasonable that she was in communication with him on a consistent and regular basis and that she would communicate to me their decision." Id. at 81:8-12. Petitioner, however, testified that he never authorized his wife to advise Counsel about his wishes concerning filing an appeal and specifically did not instruct her to inform Counsel that he did not want to appeal. Id. at 10:7-21.

No decision was made concerning whether Petitioner would plead guilty in the state case within the two-week period that he was contemplating appeal in his federal case. Id. at 74:19-21; Gov't Ex. 3. Further, Counsel was not aware of any communication between Petitioner and Mr. Savino, the attorney who represented Petitioner in the state case, during the time between entry of the federal judgment and the deadline for filing the notice of appeal. Id. at 75:9-18.

Petitioner eventually pled guilty in the state case in November 2013—several months after the time to file an appeal in the federal case expired. Gov't Ex. 3. Ultimately, as a result of a plea agreement reached with the Philadelphia District Attorney's Office, Petitioner was sentenced to five years' imprisonment in his state case, which was to "run concurrent and coterminous with [his] federal sentence" and "be served in federal custody." Id. at 3.

## IV. CONCLUSIONS OF LAW

In Ground 1 of his 2255 motion, Petitioner claims that his Counsel provided ineffective representation under Strickland, because he failed to fully consult with Petitioner regarding the decision whether to appeal, which ultimately resulted in Petitioner's failure to file an appeal. The Court will address the claim below.

### A. Performance

In Roe v. Flores–Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court applied Strickland to an attorney's failure to file a notice of appeal. Id. at 476–77, 120 S.Ct. 1029. As a threshold matter, the Court recognized that a lawyer who disregards his client's explicit instructions to appeal renders ineffective assistance. Id. at 477, 120 S.Ct. 1029. However, the Court rejected as inconsistent with Strickland a rule finding it per se unreasonable for an attorney not to file a notice of appeal on behalf of a client unless the client had told the attorney not to appeal. Id. at 478, 120 S.Ct. 1029. Instead, the Supreme Court directed reviewing courts to conduct a "circumstance-specific reasonableness inquiry" regarding counsel's failure to file a notice of appeal whenever the client did not express a desire to appeal. Id.

In the instant case, Petitioner never explicitly told Counsel to file the notice of appeal. Instead, both Petitioner and Counsel agree that the only post-sentencing conversation between them ended with the question of whether to appeal left open. Evidentiary Hr'g Tr. at 8:7-9, 29:23-30:2, 73:20-74:8. Therefore, the Court must conduct the "circumstance-specific reasonableness inquiry" required under Flores–Ortega. 528 U.S. at 478, 120 S.Ct. 1029.

In undertaking this inquiry, the court begins by considering the attorney-client consultation. Id. "If counsel has consulted with the defendant [regarding his right to appeal], the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. Conversely, if counsel did not consult with the defendant and did not file a notice of appeal, he performed below the constitutional threshold "when there is

reason to think either (1) that a rational defendant would want to appeal ..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480, 120 S.Ct. 1029.

 The consultation itself might also be deficient. Under Flores–Ortega, "consulting" entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478, 120 S.Ct. 1029. And, consistent with Strickland, the advice an attorney dispenses during a consultation about filing an appeal must meet an "objective standard of reasonableness." Hodge v. United States, 554 F.3d 372, 380 (3d Cir. 2009).

Here, the Court finds that the consultation between Counsel and Petitioner was constitutionally deficient, because Counsel started, but did not complete, the attorney-client consultation concerning the appeal. Although neither Petitioner nor Counsel testified as to the precise substance of their conversation at the FDC following Petitioner's sentencing, they agree that they discussed the possibility of taking an appeal and that Petitioner did not reach a decision that day. See Tr. at 8:7-9, 29:23-30:2, 73:20-74:8. That Counsel was unsure about Petitioner's wishes is evidenced by his e-mail to Mrs. Battaglini roughly a week later asking whether Petitioner intended to file an appeal. Gov't Ex. 2. In response, Mrs. Battaglini explained that she needed to consult with Petitioner and that Petitioner would likely need additional information about the interaction between a federal appeal and the then-pending state court charges. Id. Despite Mrs. Battaglini's message, Counsel did not reach out to Mr. Savino concerning the status of plea negotiations in connection with the state charges or even confirm that Petitioner had the opportunity to dis-

cuss the impact a federal appeal might have had on those plea negotiations with Mr. Savino. Instead, after mailing Mrs. Battaglini, Counsel made no further efforts to "advise the defendant of the advantages and disadvantages of taking an appeal." Flores–Ortega, 528 U.S. at 478, 120 S.Ct. 1029.

More importantly, after meeting with Petitioner at the prison, Counsel never "made a reasonable effort to discover the defendant's wishes." 528 U.S. at 478, 120 S.Ct. 1029. The Government suggests that it was reasonable for Counsel to communicate with Mrs. Battaglini, rather than Petitioner, concerning the decision whether to take an appeal, because Mrs. Battaglini was very involved in Petitioner's criminal case and routinely communicated with Counsel on Battaglini's behalf. Evidentiary Hr'g Tr. at 20:1-2; 21:12-18. However, the Government presented no evidence that Petitioner entered a power of attorney or otherwise advised Counsel that Mrs. Battaglini was authorized to act on his behalf concerning the decision whether to take an appeal. As the Government admits, Evidentiary Hr'g Tr. at 93:5-7, the decision of whether to take an appeal is personal to the client. See Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); Am. Bar. Ass'n, Criminal Justice Standards for the Defense Function § 4-5.2 (4th ed.) ("The decisions ultimately to be made by a competent client, after full consultation with defense counsel, include ... whether to appeal."). It was therefore unreasonable for Counsel to rely on Mrs. Battaglini's representations as to her husband's wishes, without ever confirming with Petitioner that Mrs. Battaglini had such authority.

For the above reasons, the subsequent service—or lack thereof—that Counsel provided after the initial consultation at the FDC "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 687–88, 104 S.Ct. 2052, and thus was deficient.

## B. Prejudice

■ Turning to the prejudice prong, a defendant in Petitioner's circumstances "must demonstrate that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed." Flores–Ortega, 528 U.S. at 484, 120 S.Ct. 1029. To make this determination, the reviewing court is to consider the totality of the circumstances. Hodge, 554 F.3d at 381. Among other things, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." Flores–Ortega, 528 U.S. at 485, 120 S.Ct. 1029. Finally, "[t]hough it is tempting to do so, [the court] should not inquire into the merit of a prospective appeal," since "loss of a requested direct appeal is prejudice enough." Velazquez v. Grace, 277 Fed. Appx. 258, 261 (3d Cir.2008) (nonprecedential); see also Flores–Ortega, 528 U.S. at 486, 120 S.Ct. 1029 ("[I]t is unfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit .... Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed."); Peguero v. United States, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit."); id. at 30, 119 S.Ct. 961 (O'Connor, J., concurring) ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding pro se in an initial 28 U.S.C. § 2255 motion."). Thus, a defendant's inability to demonstrate potential merit "will not foreclose the possibility that he can satisfy the prejudice requirement." Flores–Ortega, 528 U.S. at 486, 120 S.Ct. 1029.

■ Here, at least three factors suggest that Petitioner would have wanted to appeal his conviction and/or sentence. First, he went to trial and maintained his innocence throughout, as opposed to entering a guilty plea. Second, three of Petitioner's co-defendants with whom he was tried—Massimino, Canalichio, and Staino—filed appeals. See Hodge, 554 F.3d at 381 (finding that where there are strong "parallels" between the movant's case and that of a co-defendant who did appeal, it is "difficult to imagine" that one defendant would appeal and the other would not). Third, given that Petitioner filed a posttrial motion and objections to the PSI—both of which raised issues that might also be addressed on appeal—he had several nonfrivolous arguments to raise in an appeal of his conviction, sentence, or both.

The Government suggests that, even if Counsel had fully consulted with Petitioner, Petitioner still would have elected not to file an appeal, because he did not want to serve time in state prison and his lawyer in the state case, Mr. Savino, was attempting to work out a plea agreement in which Petitioner could serve his state sentence "concurrent and coterminous" with his federal sentence in a federal prison facility. Evidentiary Hr'g Tr. at 16:22-18:7. Under the Government's theory, if Petitioner's federal sentence was vacated by the Third Circuit, he would be required to serve time for his state-law crimes in state prison, which he did not want to do. Id. at 19:18-22; 62:8-13. Alternatively, the Government suggests that filing a federal appeal might have some-

how caused a breakdown in the plea negotiations with the Philadelphia District Attorney's Office that were purportedly then ongoing in the state case. Petitioner, however, went to trial in the federal case hoping to be acquitted of all charges. Id. at 75:13-18. And, from the record before the Court, there is no way to tell what impact, if any, a federal appeal would have had on plea negotiations with the Philadelphia District Attorney's Office, much less whether those negotiations were ongoing at the time Petitioner was contemplating whether to take an appeal. The only piece of evidence in connection with the state drug case, a copy of the docket in that case, suggests that Petitioner's guilty plea was not entered until November 7, 2013—several months after his time to file the federal notice of appeal expired. Gov't Ex. 3. For those reasons, the Court finds the Government's argument dubious.

Finally, the Government seems to suggest that Counsel's constitutionally ineffective assistance did not prejudice Petitioner, because the Court expressly told Petitioner at the conclusion of the sentencing hearing that, if he wished to appeal his sentence, he must file a notice of appeal within fourteen days from the date of entry of the judgment. Gov't's Suppl. Br. at 4, ECF No. 4. This argument has been squarely rejected by the Third Circuit, because it "conflates the sentencing court's obligation, under Fed. R. Crim. Pro. 32(j), to inform the defendant of his right to appeal and an attorney's responsibility, under the Sixth Amendment, to provide effective assistance in the initiation of his client's appeal." Hodge, 554 F.3d at 381. The Government's related contentions that Petitioner should have done more to contact Counsel, such as by writing him a letter, or could have written to the Court concerning his wish to file an appeal likewise casts aside the constitutionally imposed duty of counsel to consult with his or her client about the advantages and disadvantages of taking an appeal.

There is no reason why Petitioner would not want to appeal his conviction, where he was facing eight years in prison, he did not know how much time he would get in the state court case, he had filed post-trial motions raising non-frivolous arguments, and several of his co-defendants had elected to file appeals. The Court therefore concludes that Petitioner was prejudiced by Counsel's failure to initiate the appeal process.

\*\*\*

For the above reasons, under Strickland and Flores–Ortega, Counsel's failure to fully consult with Petitioner regarding the decision whether to take an appeal constituted ineffective assistance of counsel, which resulted in prejudice to the Petitioner in the form of failure to file an appeal.

### C. Remedy

 Having determined that Counsel's consultation with Petitioner concerning whether to take an appeal was constitutionally ineffective and that Petitioner was prejudiced in that he was deprived of the right to a direct appeal, the Court must now turn to the question of relief.

 Where counsel's assistance is ineffective under Flores–Ortega, the Third Circuit has found that the appropriate remedy is to re-enter the initial sentence so the movant has an opportunity to file a timely direct appeal. Hodge, 554 F.3d at 381; United States v. Shedrick, 493 F.3d 292, 303 (3d Cir.2007). "This will put [the movant] in the same position he would have been in if he had had effective assistance of counsel." Shedrick, 493 F.3d at 303. Such relief should be provided even where the appellate court issued an opinion in a co-defendant's case, since the court

"cannot assume ... that the cases are identical," and each case should be "dealt with on its own merits." Hodge, 554 F.3d at 382 n. 12.

Accordingly, it is of no matter that the Third Circuit affirmed the convictions and sentences on Petitioner's co-defendants who appealed. See generally Massimino, 641 Fed.Appx. 153. This Court is required to vacate Petitioner's sentence and re-enter that sentence, so that he has the opportunity to file a direct appeal.

## V. CONCLUSION

For the reasons stated above, the Court will grant Petitioner's 2255 motion on the ground that Counsel was ineffective for providing a constitutionally deficient consultation to Petitioner concerning whether to take an appeal, which ultimately resulted in Petitioner's failure to file an appeal. Accordingly, the Court will vacate Petitioner's sentence and order the resentencing of Petitioner (in order to restart the clock so that Petitioner may have an opportunity to seek direct review).

An appropriate order follows.

### ORDER

**AND NOW,** this **29th** day of **July, 2016,** upon consider of Petitioner Gary Battaglini's Petition for a Writ of Habeas Corpus (ECF No. 1679) and following an evidentiary hearing held on May 18, 2016, and for the reasons stated in the accompanying memorandum, it is hereby **ORDERED** as follows:

1. The petition in **GRANTED** on the ground that Petitioner's trial counsel was ineffective for providing a constitutionally deficient consultation to Petitioner concerning whether to take an appeal, which ultimately resulted in Petitioner's failure to file an appeal (Ground 1).

2. Petitioner's sentence is **VACATED.**

3. Pending re-sentencing, Petitioner shall be **DETAINED** pursuant to the Court's order dated February 6, 2013, revoking Petitioner's bail and remanding Petitioner to the custody of the Bureau of Prisons post-conviction, ECF No. 1191, and 18 U.S.C. §§ 3142(f)(1)(A) and 3143(a)(2).

4. The Court will hold a status and scheduling conference on **August 12, 2016,** at **10:00 A.M.** in Courtroom 15A, James A. Bryne United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, to select a date for a hearing at which Petitioner will be re-sentenced (in order to start the clock so that Petitioner may have an opportunity to seek direct review). At the same conference, the Court will consider how to proceed, if any all, with the other four grounds raised in the 2255 petition and held in abeyance pending the disposition of Ground 1.

**AND IT IS SO ORDERED.**